## THE STATE v. STOKE.

**Highways**: ESTABLISHMENT: TIME TO REMOVE FENCES: TRESPASS. RESISTANCE. Where a new highway is established, the owners of the lands through which it runs are entitled to a reasonable time to remove their fences which cross it. And, where there is delay in so doing, it is for the road supervisor to open the road; and until it is opened a private citizen has no right to take the law into his own hands and open it, and force his way over it; and, where he attempts to do so, the owner of the land may use sufficient force to prevent the trespass, without being guilty of an assault.

*Appeal from Davis District Court.*—HON. H. C. TRAVERSE, Judge.

FILED, MAY 13, 1890.

THE defendant was accused of an assault by information before a justice of the peace. He was tried and convicted. He appealed to the district court, where he was again tried, with a like result. From a judgment upon the conviction he appeals to this court.

*M. H. Jones* and *Henry C. Taylor*, for appellant.

*John Y. Stone*, Attorney General, for the State.

ROTHROCK, C. J.—I. The defendant is the owner of a farm through which a public road was established by the board of supervisors. The defendant filed a claim for damages for that part of his farm taken for the road. He appealed from the amount allowed him by the board, and a trial was had in the district court. After the trial the matter was compromised, and the defendant was paid the amount agreed upon. This payment was made on the fifteenth day of November,

1888. After that there was no legal impediment in the way of the new road, except that the owners of the farms through which it was established were entitled to a reasonable time to remove their fences from the land over which the road was located. It was in the winter season, and there was delay in the matter. On the twenty-third day of March, 1889, the defendant had not completed fences along the road through his farm, and there was a fence and a gate on his land across the new road. There had been ill feeling between one Beedle and the defendant about the establishment of the road, and, on the said twenty-third day of March, Beedle attempted to travel on horseback over the new road, through the defendant's farm. The defendant saw him going towards the gate, and went to him, and, according to the testimony of Beedle, the following interview took place between him and the defendant: "On March 23, 1889, at Drakeville township, I went along the new road, and came up through defendant's field, and when near his house he came at me with his fists drawn. He was mad, frothing at the mouth, and his face all covered with slobbers. He said: 'You confounded old rebel, I have been watching for you for some time.' He took my horse by the rein, and turned him around. I said I didn't want to go that way. He made a grab at me, and would have caught my leg if I hadn't moved it back. His wife said something. I couldn't hear it all; part of it was, 'Go back, Beedle.' I said: 'It is not your put in now; it is the old man I have to do with.' Stoke said he'd die there before I should go through his gate. I said I did not want him to die, and turned around and went back. I intended to go back that way (through the gate). I said I would ride over the gate if he didn't let me go. Before I got to the gate he was coming at me, shaking his fists. I went inside of the stakes, over the new road. Didn't find any fence or ditch in the way, and saw a wagon track along the new road. Fence posts could have been driven any time during the winter."

CROSS-EXAMINATION.

"*Q.* Can you hear, Mr. Beedle? *A.* What?

"*Q.* Did you hear what Stoke said that day? *A.* Part of it. I couldn't hear what he said before he got to the gate. He was making a good deal of noise. After Stoke got through the gate I was ten or fifteen feet from it. There was a fence across this new road, but the school children had laid down three or four panels of it. I intended to go through that gate. I don't think I went around any fence, nor around any ditches. Defendant had sent word, by Smith, to me, to have my children shut the gate as they went to school. I said that if the children found the gate open to leave it open."

This was the "head and point" of defendant's defense. It is claimed by Beedle that he was unlawfully assaulted. He does not claim that the frothing at the mouth of the defendant, and having his face covered with slobbers, was an assault. But his fists were drawn, and he made a grab at Beedle's leg, and turned his horse away from the gate. Now, it may be conceded that taking hold of a horse, and making a grab for the leg of the rider, would be an assault on the rider, if unexplained. But Stoke claimed that the road was not yet opened, and the evidence shows beyond all controversy that he was correct in making the claim. It was no part of Beedle's duty to open the road. That was the duty of the road supervisor. The supervisor received notice to open the road in the winter, and it was not opened for travel until March 25, some two days after the alleged assault. The defendant was setting his posts to fence the road on the day of the interview between him and Beedle, and at that time the ground was frozen ten inches deep.

There appears to have been a great deal of evidence on the trial upon the question whether the defendant should not have set his posts and built his fence at some time during the winter, when there was no frost in

the ground; and the court instructed the jury that, if he had reasonable time, and failed to open the road, he had no right to resist Beedle, and prevent him from traveling over the road. We think that was not a question for Beedle to determine. He knew the road was not opened for travel through the defendant's farm. Upon this question, the road supervisor testified as follows: "I examined the ground several times during the winter, with a view of working this road, and found it frozen, and attempted three times to work the road, and did open it just as soon as it could be done. When defendant set his posts the ground was frozen ten inches. This was on the day of the assault, March 23. There was a rail fence across the road on defendant's land, west of the gate, and ditches that could not be traveled across. There was no travel on the new road,—not on the line of the road. A person could not approach this gate from the west without traveling over the private lands of Lockman and Stoke. Beedle was traveling from the west, going east. Opened the road on the twenty-fifth of March, 1889." The defendant requested the court to charge the jury that "Beedle had no right to take the law in his own hands, and open the road, or force his way over defendant's land. The duty of opening the road belongs to the road supervisor, and not to private citizens." The court refused to give this instruction to the jury. We think that, under the facts of the case, it should have been given. If it had been given, the jury, doubtless would have found that the defendant used no more force, and made no more of a demonstration by threats, than was necessary to prevent Beedle from going through the gate. REVERSED